We will hear argument next in case number 23-1117, I don't know how to pronounce the name, Perciavalle v. McDonough. I would normally say good morning, your honors, but it is now past noon. And it's been a long week for all of us. I'm sure we're ready for the day and this session to end. But without further ado, Kenneth Carpenter appearing on behalf of Mr. James Perciavalle. This matter involves the interpretation of the fee authorizing statute for attorneys and accredited representatives at 38 U.S.C. 5904C1. Mr. Perciavalle asked that this court determine whether or not there is any permissible interpretation of this statute, which requires that the Veterans Court, as it did in this case, defer to a board determination that an NOD has no legal effect. The Veterans Court treated that as though it were a factual determination. We believe clearly that the record demonstrates that there was an existence of an NOD in the record that was recognized by the VA, accepted by the VA, and a statement of case under the old legacy system. I was just going to ask, I have to say I don't think I saw that issue raised in your blue brief. I thought maybe the issue you're raising in the blue brief more involved, you know, which statute, the 2006 version of 5904 or a pre-existing statute applied, but not, you know, did the board err as a legal matter when it found that the 2009 NOD wasn't in fact a NOD? Well, Your Honor, in all candor, the decision below is a little difficult to follow. The Veterans Court recognized that Mr. Perciavalle disagreed with which version of the statute applied. And then it said that the board chose to apply a different version in this case, and at least our implication was, as opposed to the version that we asserted applied. The court then went on to say, but this choice by the board involves an answer to a question of fact, as to which NOD precipitated the claim stream that led to the eventual March 2017 grant of benefits that was the event that resulted in the contingency fee trigger for the payment of fees. Therefore, it seems to us that it's difficult to separate those, because at the heart, there was only one version of the statute to interpret, and that was the version of the statute in which there was, as is indisputable in this record, an existing NOD. If there was an existing NOD, then that's the end of the inquiry. What do you make of the footnote one on page A3 of the record, which is the Veterans Court's decision? Footnote one. Okay. And what it says, you're talking about the question they think you raised, and they say footnote one. This question is different from the one about whether a document is a NOD, which is a question of law. That's right, Your Honor. But in that context, in this footnote and in the reference to the Burrell decision below, that was a question about whether or not, for the purposes of obtaining review by the board, was there a document that initiated an appeal? That document is for an express purpose, and the response in the legacy system when there was such a document was to issue a statement of the case. Do you agree that Public Law 109-461, Section 101H, I think, that that is the thing that we should be looking for, the law on the effective date, of whether the 2006 version of 5904 or the pre-2006 version would apply? And if you'd like, I'm happy to read the relevant language. It says something like, the amendments made by subsection C1, that's of the, okay, shall take effect on a date that is 180 days after the date of the enactment of this act and shall apply with respect to services of agents and attorneys that are provided with respect to cases in which notices of disagreement are filed, Your Honor, after that date. And I think you agree that applies, and that's why you want to make sure that you're arguing here that the May 2009 NOD is, in fact, a NOD. That's, well. Do I have that right? That is correct, Your Honor. And the point of our appeal is that the Veterans Court, in contravention of that enacted language, and it's important to understand the kind of chronology here because this NOD, what I'll refer to as the second NOD, was filed by the appellant when he was acting pro se. It was more than five years later before Mr. Percivali was hired. And then the question becomes, what was the intent of Congress when it amended this statute? And we believe that this court in MVA clearly articulated that the purpose of all of the amendments to this statute were simply to identify different triggering events. And the triggering event that was described in this applicable provision of the statute was the existence of an NOD. Can I tell you my concern? My concern is this. You're saying now the issue on appeal is whether the board erred in finding as a matter of law that the later NOD is not, in fact, a NOD. But where is that discussed sufficiently in your brief that would allow me to make an informed decision on that issue? Like, where is the case file telling me when something is a NOD versus not a NOD? Where is this fleshed out? Because there's a lot of arguments in the brief, but I don't see them. With all due respect, Your Honor, we're not discussing the question that is in that footnote, whether it does or doesn't constitute a legally relevant NOD for the purposes of 7105 appeal. It is the question of whether or not the language used by Congress by identifying the event as an NOD, was there ever any intent expressed by Congress in the plain language used by that statute that would permit what the board did and what the Veterans Court affirmed? What the Veterans Court affirmed was to revisit, if you will, the question of the validity of that NOD. That's not in the statute. All that's in the statute is the presence of an NOD. Got it. So your point, I think, is that it doesn't matter whether it was legal or not. That's a side issue. What matters is that it was an NOD. That's correct. Let me throw something at you. Okay? Let's say there was a sham NOD file. Let's just say so. I mean, just for hypothetical reasons. Sure, sure. Why would Congress want to, given the clear language of when the effective date of the letter 5904 statute, why would they want to have a sham NOD make it so that statute is effective? I don't think that's the logical extension of the argument that we're presenting. I believe that that is a reasoned hypothetical of what could happen if you only paid attention to whether there was or there wasn't an NOD in the record. But here, Your Honor, we're dealing with, if you will, two competing NODs, one of which the Board decided, the one that granted the right to charge a fee, to be not lawful for the purpose of an appeal. Because the TDIU is subsumed within the PTSA. That's correct, Your Honor. Now, I would direct the Court's attention to the fact that in the very document that created this litigation, the March 13, 2017 fee decision, which is in the appendix at 73 to 76, at appendix 74, decided that this NOD that was filed in October 31, 2006, excuse me, was not a valid NOD for the purposes of fees. But on the very next page, in dealing with the same decision. You're looking at page 74, maybe? Page 74 of the appendix. Now moving on to page 75. And on the following page, it deals with the grant in the same decision for special monthly compensation based upon housebound criteria having been met. There, the same decision says, upon review, we've determined that the grant of SMC housebound is a downstream issue to both the NOD filed in October 2006 and the NOD filed in May of 2009. We submit, Your Honor, that that demonstrates that there was no basis for the Board to query about the underlying, quote, validity of that second NOD. That's part of arguing it as there can't be a, I forget what the right word is. There can't be a dispositive NOD. Operative. Operative NOD. I was trying to remember what the word was. An operative NOD. Yes. Yes. The question of the, if you will, the operativeness of the NOD is not placed at issue by the language used by Congress. If Congress wanted that kind of inquiry, if Congress was concerned to have the VA do what it's doing, which is to police the record to decide whether or not there is a basis to undo this fee agreement. The reality here is, Your Honor, the veteran entered into a fee agreement agreeing that he would pay a contingent fee to Mr. Percivali. Mr. Percivali did the work that he did with the anticipation that he would receive a fee. Then he essentially gets a split decision by the VA. And an appeal has to be taken by Mr. Percivali because he's been denied the right to charge a fee based upon an inquiry that could never have been contemplated by Congress. Can I ask you this? Yes. Suppose, contrary to your position, that the validity for any purpose of a NOD is irrelevant. Suppose it's relevant. And at least as I read the board's observation on this, 135 to 138 or something of the appendix, it says the 2009 NOD, even though we said some stuff when we remanded it before that points the other way, it was actually invalid because its subject matter was the same subject matter as was already subject to, was already covered by the 2006 NOD. I guess two questions. Is that exactly what the Veterans Court said? That position doesn't require one to say that there is one and only one operative NOD. There could be two. And I think ultimately the board said there were two because the special monthly compensation was different enough from the underlying PTSD that for that purpose the 2009 NOD counted. And all you need is one valid NOD post whatever this 2007 date is. It doesn't matter whether there were also valid NODs before. But where would we stand in terms of something within our jurisdiction, some legal error if that view of the matter were accepted, that inquiry into the validity of a NOD based on this case law that says is it raising a different issue? Where would that leave us? My difficulty in responding, of course, is those aren't the facts of this case. But with that qualification, even the board. This is what the board said. The 2009 is invalid. So there's only one NOD and it's too early. Done. It gets to the Veterans Court. The Veterans Court doesn't quite say that, I don't think. It says, this is on the appendix page 4, the record doesn't show any outside of the 2006 letter, any NOD that could be construed as a NOD challenging the PTSD rating. And then TDIU was ultimately withdrawn. I'm not quite sure whether that says that the board, that the Veterans Court is agreeing that the 2009 was invalid. I have no way of knowing what was in the mind of the author. But let me do point the court's attention to appendix 186 to 224. That is the statement of case. And that statement of the case identifies, as did the original rating decision, which is at appendix 20 to 33, that denied not just TDIU, but I believe it was 13 other issues. Now, the point of this statute, 5904C1, is to identify when it is permissible for an attorney or an agent to charge a fee. It's the starting point. That NOD was what triggered the right to address all of those issues in the NOD, in addition to the issue that had been pending relative to the rating of PTSD. And the question of TDIU would have applied not just to the PTSD, but would have applied equally to the six other service-connected disabilities to which the veteran was seeking increased compensation. So as a consequence, we've gone far afield of what Congress was writing to simply describe when fees were permitted to be charged. And that was the only issue before the Veterans Court. I'm sorry. I was just going to ask you, this is a different, unrelated question, but just something that I don't know about. Sure, sure. We're getting a good number of these cases, so I'm just trying to understand. We have this old case. It's called Skates. And in the case, it says- I'm sorry, it's called what again? Skates. Oh, Skates. Oh, yes. I'm very familiar with Skates. An attorney may receive a fee only if it fairly and accurately reflects his contribution in response to the benefits received. All right. I'm wondering. I don't know anything about it. You were saying that this is just telling us when an attorney can be hired and start receiving a fee. Yes. Are there other boundaries on the kind of fee that an attorney may receive? There are, Your Honor. And Congress specifically provided independently by statute the right for both the secretary as well as the appellant to seek review of the fee agreed to in the fee agreement to determine whether that amount should be reduced as being either excessive or unreasonable. But that is a separate statutory track and a separate statutory appeal process independent from the right to the fee. And the right to the fee is covered by 5904C1. For purposes of educating me, what is the other statutory-what is the statute? Do you know it off the top of your head? Well, it's in 5904, but the precise number I'm afraid- But it is in 5904. It is in 5904. Okay. Yes. And it is also in the secretary's regulation interpreting that statute at 20.1634I, I believe. Great. That's great. But now you're really testing me. Thank you. Have you handled some of these cases before? One or two. Thank you. Good afternoon, and may it please the Court. Your Honor, to Your Honor's last question, if it's helpful, I believe it's 38CFR14.636 and 38USC5904A5. I'll start first, Your Honors, with the question regarding the statutory fee scheme that applies for the PTSD compensation claim here. Congress explicitly set forth that the 2006 amendments apply based on the date of the notice of disagreement. And if the notice of disagreement was filed after or on June 20, 2007, the Veterans Benefit Act applies. If it was filed before, the predecessor applies. So the way you've just framed it presupposes that there's only one. Correct. Why is that true? That's true, Your Honor, because the purpose of a notice of disagreement means there's an initiation of an appeal. So once an appeal is initiated, it's initiated. A Veteran can certainly submit additional information and supplement that appeal. But once the appeal is initiated, there's nothing further to do there. This Court's opinions, I believe, in the Grantham case and the Barrera case, both of which are cited on page 14 of our brief, provide that there can be one notice of disagreement per element. Per element? Correct. But the 101H provision talks about notices of disagreement in cases, and I thought you actually, at the end, near the end of your brief, you acknowledged that there can be more than one notice of disagreement in a case. Absolutely. So why is this not that? Sure, because what we're dealing with here is the element of compensation for PTSD. Compensation is one of the five elements of a case. So certainly there can be a notice of disagreement as to each element, but the only thing that we're dealing with here is PTSD compensation. Just remind me, in Grantham and Barrera and whatever else, did we say one per element or one per issue? I believe both words are used depending on the case. So why is TDIU not a different issue? Well, Your Honor, I think the first thing to keep in mind there is the benefits that came about here were related to PTSD. There was no TDIU award. Why should that matter? What resulted? Sure, because the appellant is seeking a fee based on the benefits that were awarded. So he's seeking a fee based on PTSD. And so whether there was a different NOD on a completely different issue— I'm not sure where the benefit awarded comes into the language of 101H, which just says an NOD in a case after the 2007 date is enough. At that point, we can talk about whether fees were unreasonable or excessive under whatever that provision is, A5. Sure. But we're done talking about which of the two versions of the statute applies. Sure. So if there's an NOD and there's only one NOD per element, and the element is PTSD compensation, that was filed in October of 2006, and the appellant agrees that that was an NOD. So that is the one. Any subsequent filings regarding PTSD could be supplements to that appeal. Would a TDIU request be in the same case? Yes, Your Honor. And the Board found that if you look to Appendix 114 and 115, the Board explained that there was actually no need for a Notice of Disagreement as to TDIU because it was actually part of the original PTSD claim, and that's under the Rice v. Shinseki TDIUs raised with the original claim. There was actually no need for that subsequent NOD on TDIU because TDIU initiated in January 2006 when the PTSD claim was initially filed. Was the May 2009 NOD nevertheless authorized for other aspects of the case? Not the PTSD, but for other aspects of the case. Presumably, yes, Your Honor, because it referenced the March 2009 VA decision, which related to 14 other issues, not PTSD. Why isn't that enough under 101H? I think everything you're doing, which the Veterans Court opinion does as well, is to focus on just the PTSD for which the award was ultimately made, and I'm confused about how that fits with the seemingly broader language of 101H, which is about having one NOD in the case after 2007. Sure, Your Honor. So there's one NOD for PTSD. There could be another NOD for the 14 other issues, for example. But the appellant here is seeking fees for PTSD, so the relevant question for the Veterans Court, we would argue here it's outside of this court's jurisdiction, but the relevant question here is what was the NOD for PTSD? Because that's where the fees are coming from. What do we do about the fact that the statute just says a NOD in the case? It doesn't say, you know, the attorney is entitled to fees or this statute will become effective when a NOD for the benefit received has been filed or something like that. It seems to me that perhaps you're reading something in. Am I misunderstanding? Yeah, I would disagree, Your Honor. It does say an NOD, but, again, if there can only be one and an NOD was filed and made. Why can there only be one NOD in the case? There can only be one NOD per element of the case. Where does the statute talk about an NOD per element, an NOD on that element instead of an NOD in the case? The statute does speak, I guess, more broadly. This Court's precedent has long acknowledged, as has the Veterans Court, there's one NOD per element. And, again, that makes sense. If you've already filed essentially a notice of appeal, why would you need to file another one? The appeal process has been initiated. That's what an NOD is. It just initiates the appeal process. So if I've initiated the appeal process and then three years later decided to initiate the appeals process, we've already done that. There's only one NOD per element of the claim. That's all true. I think where we're struggling is 101H says cases. So how are you squaring your argument with 101H saying that the new provisions shall apply with respect to services that are provided with respect to cases in which notices of agreement are filed on or after June 20, 2007? Your Honor, if the Court were to read this so that there can only I mean, if we're reading it as a case rather than specific elements, then that would essentially mean that the first NOD filed in any case, that's the effective... No, no, no, no, no. Absolutely. I think you've got it upside down. All it takes to be in the new regime is an NOD after 2007. You could have had seven earlier. It wouldn't matter. And what's the Veterans Court decision that was cited in the Veterans Court? I think also turned it upside down. Cameron. Cameron said you have to have one before. That's not what the statute says. It says to get the benefit of the new statute, all it takes is one after. I think a helpful case for Your Honors is the Brera case. In that case, there were two NODs related to two different elements, and it dealt with the same issue of there was an effective date, so I'm just going to call it June 20, 2007, but it was a different date. And one NOD was filed before that date, and one NOD on a different element was filed after that date. And this Court held that for the element filed before, that was under the predecessor statute, and for the NOD with the element filed after, that was in the subsequent statute. So this Court has broken it down. Is it Brera? Brera. I believe it's 14 on our response brief. Was this a fees case? Yes, Your Honor. And it was a different statutory scheme because, as Your Honors are aware, the Veterans statutory schemes have changed quite a lot. So this was under not the Veterans Benefit Act, the predecessor, but a different one. Is there a language like 101H that referred to notices of disagreement being filed in a case? I don't know that it was. I'm not sure, Your Honor, if it was that specific. I don't know that it wasn't. But the concept is the same here. It's not the latest NOD filed brings the entire case into the different statutory scheme. It's which NOD for that element, and that depends which statutory scheme you're in. It dictates which statutory scheme you're in. And that makes sense, Your Honors, because if, for example, in this case, the notice of disagreement was filed in 2006. This fee agreement was entered in 2016. Mr. Percival did no work whatsoever on this case. I don't know that. But I heard Mr. Perpenter say he was representing him pro bono. I don't know. And I was about to say the same thing as Judge Schrenfer. I'm not sure that matters because there's these other, you know, to the extent that it's unreasonable or something like that, maybe there's a different proceeding that could be undertaken on different parts of this case that could be relied on, right? I mean, you're asking us to make a judgment call, right, on the amount of work done. No, Your Honor. I was just going to point out that it would make no sense under the appellant's argument that depending on which state they file a subsequent notice of NOD, that determines which statutory scheme they're in. It would mean that anyone could be in the new statutory scheme because they would just file another notice of disagreement. That's why I asked my sham question before. If there were a sham NOD, what would be the impact there? The impact under the appellant's argument would be, well, you filed an NOD and you are after 2006 or 2007, June 20, 2007, so therefore you get the benefit of the Veterans Benefit Act. So it's essentially forum shopping but for the statutory schemes that you're under. What about you agree, I think, that here the 2009 NOD did have some impact for some claims, right? It wasn't a sham, right? I don't think that it had any impact, Your Honor, because there was a remand to the board and then the full benefits were awarded to the veteran. What about the language at pages A74 to A75 that was cited by Mr. Kroger? Page A74, Your Honor, speaks exactly to the argument that we're making here, that there was a notice of disagreement filed before the June 2007 date and therefore- I guess I'd back up. Maybe page A75 talks to it. I think his point was that while the position was taken that with respect to PTSD, the 2009 NOD might not have been necessary. The A75 in the top paragraph shows that there was some credit in some work, I guess, that was being done by the May 2009 NOD for other things like SMC. That's why Mr. Percy and Valerie was able to recover some fees, right? Perhaps, Your Honor. I think that the appellant overstates what's being said here. There's a reference to the May 12, 2009 NOD. It doesn't say specifically that that had any legal effect. It's just a reference. There's also a reference to the October 2006 NOD. The ability of Mr. Percy and Valerie to obtain fees for the SMC, that is wholly aside from what he's seeking here. Here he's seeking fees for PTSD, and the nod for PTSD was filed in October 2006. He agrees. The only distinction between the parties here is he thinks there can be two nods for the same element, and there can't under this Court's precedent. Why was Mr. Percy and Valerie allowed to have fees for SMC? Why is that? Was there a final board decision that allowed that? No, Your Honor, and it's because there was never an appeal by the veteran, and the VA can't appeal that. Why is it that the post-2006 5904 version applies to SMC? I'm not sure, Your Honor. It's not in the record. It might be because there's 14 other claims that are implicated that aren't relevant to the PTSD claim. But there's some NOD somewhere that was filed that makes it so the 2006 version of 5904 can apply. I mean, presumably because there was the award. And the fact that the page before VA said the PTSD was filed in October 2006, therefore you're under the predecessor scheme, and the very page later they say SMC is different, you're under the different scheme, reflects that there was some acknowledgment that the June 20, 2007 date is the line in the sand that needs to be drawn. And before I'm finished, Your Honor, I think that, Your Honors, that the court doesn't even need to get here. This is an inherently factual determination when an appeal is initiated during the process. Well, except that a different view would be that a veterans court committed a legal error in how it framed what is required in 101H. That is, the idea would be it would be a legal error, the question about whether it's a legal error, to limit the inquiry to what fees were for PTSD and which the operative NOD is. That that's just incorrect under 101H. I think, Your Honor, 101H speaks to the line in the sand that determines which statutory fee scheme you're under. But there's never been a dispute, and there still isn't on appeal, that the October 2006 NOD was an NOD for PTSD. Okay, so the second piece of the legal dispute is whether it was incorrect to translate 101H into the question whether there was one before 2007, which it doesn't say, but Cameron said, or whether the question is whether there was one after. And as long as it was in the same case, that would be enough. That would be the legal issue. Understood, Your Honor. We respectfully disagree, but I understand your point here. I'm not sure. Do you think that the 2009 NOD was in the same case? I don't know exactly what the boundaries of this term, case, is. I don't remember that being disputed here. The 2009 NOD was in response to a March 2009 decision regarding different claims. And the VA made that very clear. It was addressing claims that were not already appealed. But what about the case question that I asked you? Is it in the same case? Yes, I think so, Your Honor, and that's TDIU portion was. But as the board found, there was no need for an NOD for the TDIU portion because it was actually subsumed into the PTSD already. And even if the court addresses this issue and finds it to be a legal issue, I would point, Your Honor, to the four reasons in our brief why the May 2009 NOD can't actually be the operative NOD here. For example, the PTSD determination was in 2006, September 2006. The veteran has one year to file the NOD, one year. He filed the NOD, what he's claiming is the operative NOD, in May 2009. It would be untimely. He can't rely on the May 2009 NOD for the PTSD claim. And those are the fees that he's seeking, PTSD. We've explained three other bases why the May 2009 can't also be operative here. And for all those reasons, Your Honor, we ask that the court affirm the veteran's claim. Thank you. Mr. Carpenter. May it please the Court, I'd like to start with the misrepresentation of the notion that there is one NOD per element. A, there is no case law that says that, period. The second portion is that the Barrera case was not a fee case. It was a jurisdictional case. And it was a question of whether or not, under the then existing statute, that only allowed for judicial review with a then called jurisdictionally conferring NOD that was on or after the date of enactment of the BJRA. In Mr. Barrera's case, there was one NOD, I can't remember if it was PTSD, and then the second was on depression, or vice versa, but one was filed before the jurisdictionally conferring date and one was filed after. The resolution in Barrera is that there was a second NOD, very comparable to this circumstance, that was filed after the effective date of the statute. And under that analysis, we must prevail. The other thing that is important to understand is that when the secretary muddies the water by one NOD per element, they are overlooking the fact that the respect to the case language is in the statute under 5904 C1. And it specifically refers to with respect to the case. And this court, in the Carpenter case and in the Stanley case, have clearly identified with respect to the case refers to the Roberson definition of a case. Anything that is reasonably raised, either by the veteran or the appellant. And another critical piece in this case is that the TDIU application that was filed by Mr. Fleming was filed within one year of the original rating assigned. So the element, as the government refers to it, was for that NOD for the right to additional compensation. More compensation that was originally awarded. And within that one year period, a TDIU application was made. That means the issue of TDIU was pending from that date until the time in which TDIU was actually adjudicated. It wasn't adjudicated until the 2009 decision. And that was the decision with which Mr. Fleming filed an NOD. And that was the NOD that made the fees that were ultimately, excuse me, the award of past due benefits that were ultimately granted to Mr. Fleming, subject to withholding under 5904. Unless there's further questions from the panel, I appreciate your time. Thank you. Thank you. The case is submitted. And that completes our business for today. Court.